UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSHUA DOUGLAS HENDERSON,

      Plaintiff,

v.                                                          Case No.  6:24-cv-1681-JSS-RMN

SECRETARY, DEPARTMENT OF
CORRECTIONS, BAMMERLIN,
STEPHEN MENSE, W. F.
WILLETS, SAINT-PREUX, M.
AYALA, CRYSTAL WILLIAMS,
and TAMMI L. GRIFFIN,

      Defendants.

_____/

## <u>ORDER</u>

Plaintiff Joshua Douglas Henderson is a state prisoner, proceeding pro se, in the custody of the Florida Department of Corrections (FDOC).  Plaintiff initiated this action by filing a civil rights complaint, (Dkt. 1), and a motion to proceed in forma pauperis, (Dkt. 2).  Because Plaintiff did not use the standard complaint form required by the Local Rule, *see* M.D. Fla. R. 6.04, the court struck the complaint and directed Plaintiff to refile it using the standard form.  (Dkt. 3 at 1–2.)  The court also directed Plaintiff to either pay the $402 filing fee or file a completed Affidavit of Indigency and Prisoner Consent and Financial Certificate form and provide financial statements (Affidavit of Indigency and Prisoner Consent and Financial Certificate form) for the relevant time.  (*Id.* at 2.)

Plaintiff timely re-filed his complaint (Dkt. 5) using the proper form and pointed out the location of the necessary financial statements in the record.  (Dkt. 4 at 1.)  However, Plaintiff did not submit the required certificates signed by an authorized officer at his institution.  (*See* Dkt. 6; Dkt. 8 at 2.)  He also failed to disclose the required information in sections VIII(A) and (C) of the complaint form relating to his prior litigation history.  (*See* Dkt. 5 at 29; Dkt. 8 at 2–3.)  Accordingly, the court ordered Plaintiff to, within twenty-one days, (1) either pay the filing fee or complete and return the required financial statements, and (2) "show cause in writing why he should not be subject to sanctions (including . . . dismissal of this case) for abuse of the judicial process based on his failure to honestly apprise the court of his litigation history."  (Dkt. 8 at 3–4.)  As of the date of this order, Plaintiff has not complied with either directive.  Instead, Plaintiff now moves for the United States Marshal to effect service of process on Defendants in this case.[1]  (Dkt. 10.)  Plaintiff also filed a "Motion for Prohibitory Injunction" (Dkt. 11) and a "Declaration in Support of T.R.O. and Prohibitory Injunction."  (Dkt. 12.)

## BACKGROUND[2]

Plaintiff sues Ricky Dixon, Secretary of the Florida Department of Corrections, and the following officials from the Central Florida Reception Center (CFRC):

---

[1] In the same document, Plaintiff indicates he is waiting for the prison classification department to provide the financial documents to him.  (Dkt. 10 at 1.)

[2] Plaintiff requests that the court reconsider the allegations contained in the original complaint.  (Dkt. 5 at 5.)  However, that complaint was stricken, and, in any event, the subsequent and operative complaint (Dkt. 5) supersedes the original complaint. *See Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes the original complaint.").

Captain Bammerlin, Classification Team Chairman Officer Stephen Mense, Lieutenant W.F. Willets, Sergeant Saint-Preux, Officer M. Ayala, Classification Officer Chairman C. Williams, and Lieutenant T. Griffin. (Dkt. 5 at 2–4.) Plaintiff alleges that, while housed at CFRC during his intake process, officers came to his door each day and threatened to cut his hair. (*Id.* at 16.) On June 28, 2024, "they rushed in [to his cell] . . . and [b]eat [him] to the ground and forced [him] to shave [his] head while holding [him] down," despite his screams that they were violating his constitutional rights. (*Id.* at 5.)

Plaintiff claims that Lieutenant Willets threatened him, saying that Plaintiff "w[ould] not like the outcome if [he] did not cut [his] hair." (*Id.* at 7.) Plaintiff alleges that Sergeant Saint-Preux punched him in the face multiple times, knocking him unconscious, and "submitted a false report claiming [Plaintiff] attempted to bite him, without physical evidence, with authorization from the Captain." (*Id.* at 8). Additionally, Captain Bammerlin is claimed to have organized the "extraction team" that entered Plaintiff's cell and authorized Saint-Preux's false report regarding the incident. (*Id.* at 7.) Thereafter, Officer Ayala purportedly arrested Plaintiff and Officers Mense, Williams, and Griffin found him guilty of violating the grooming policy, despite the fact that Plaintiff was merely practicing his religion. (*Id.* at 7–8.) Finally, Plaintiff alleges that the Secretary has violated his rights as the policymaker for the FDOC by not training corrections officers on state and federal constitutional law and for approving Florida Administrative Code Section

33-602.101 "to discriminate and dishonor inmates['] belief system[s] and safety." (*Id.* at 6.)

Plaintiff asserts violations of his rights under the First and Fourteenth Amendments, the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, Florida Constitution Article I, Section 3, and Florida Statute Section 761. (*Id.* at 3.) Plaintiff seeks $500 million in compensatory damages. (*Id.* at 9.)

## APPLICABLE STANDARDS

Pursuant to 28 U.S.C. § 1915A(a), federal courts are obligated to conduct an initial screening of certain civil suits brought by prisoners to determine whether they should proceed. A court is required to dismiss a complaint (or any portion thereof) "if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[,] or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A complaint is frivolous if it is without arguable merit either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Courts must liberally construe a pro se plaintiff's allegations. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) ("We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (quotation omitted)).

- 4 -

## ANALYSIS

The court first considers Plaintiff's claims arising under federal law, then his state law claims, and finally considers Plaintiff's motions for injunctive relief and service of process.

### A. Federal Claims

Plaintiff's federal claims arise under 42 U.S.C. § 1983. (Dkt. 5 at 3.) "[S]ection 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990). To successfully plead a § 1983 claim, a plaintiff must allege two elements: "(1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Id.*

Upon review, Plaintiff's claims must be dismissed. First, Plaintiff sues each Defendant in both their individual and official capacities. (*See* Dkt. 5 at 2–3.) However, a claim against a defendant in his official capacity is a suit against the entity of which the named defendant is an agent — here, the FDOC. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Because Plaintiff names the Secretary of the FDOC as a Defendant, the official capacity claims against each of the other Defendants (who he alleges are employed by the FDOC) are duplicative and must be dismissed. *See Oswald v. Diggs*, No. 2:22-cv-247-SPC-NPM, 2022 WL 3999284, at *3 (M.D. Fla. Sept. 1, 2022) ("Oswald appears to bring Count I's due process allegations against Diggs in

both his individual and official capacities.  As Diggs points out, Oswald's pleading tactic is problematic because he also brings Count I against the City of Fort Myers, which renders the official capacity allegations duplicative." (internal citation omitted)); *see also Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("In contrast to individual capacity suits, when an officer is sued under [§] 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." (quotation omitted)).

Second, "under § 1983, a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Keith v. DeKalb County*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "[A] plaintiff alleging a constitutional violation premised on a failure to train must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  Here, however, Plaintiff alleges only that the Secretary violated his constitutional rights by "not training or informing the certified correctional officers of Florida' Constitutional law and the United States['] Constitutional law."  (*See* Dkt. 5 at 6.)  Although Plaintiff broadly states that, due to his multiple grievance filings, the Secretary "had clear knowledge of what would . . . and did happen," (*id.*), Plaintiff alleges no facts showing the required actual or constructive notice of a deficiency in

corrections officers' training on religious freedom.  Indeed, even if he had, Plaintiff failed to plead that "adequate training would have prevented the injury" that he suffered, another required element of a § 1983 failure to train claim.  *See Massey v. Dorning*, 611 F. Supp. 3d 1301, 1323 (N.D. Ala. 2020) (citing *Harris*, 489 U.S. at 388–91).

Third, as to Lieutenant Willets, Plaintiff asserts only that he threatened that Plaintiff "w[ould] not like the outcome if [he] did not cut [his] hair." (Dkt. 5 at 7.)  A mere threat, however, without more, is not a constitutional violation.  *See, e.g.*, *Richburg v. Dep't of Corr.*, No. 2:19-CV-598-ECM-WC, 2019 WL 6769003, at *3 (M.D. Ala. Nov. 8, 2019) ("Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation." (collecting cases)).

Fourth, to the extent Plaintiff raises claims under RFRA, the Supreme Court found RFRA unconstitutional as it applies to state governments.  *See City of Boerne v. Flores*, 521 U.S. 507 (1997).  Therefore, Plaintiff's RFRA claims are not actionable in this case.

Plaintiff's other religious freedom claims arise under the First Amendment and RLUIPA.  "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "[P]rison officials may impose limitations on an inmate's exercise of sincerely held religious beliefs if the limitations are 'reasonably related to legitimate

penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987)). Therefore, "a 'prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable.'" *Id.* (quoting *Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000)).

Section 3 of RLUIPA

> provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person — (1) is in furtherance of a compelling governmental interest[,] and (2) is the least restrictive means of furthering that compelling governmental interest."

*Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015) (quoting 42 U.S.C. § 2000cc–1(a)).

RLUIPA provides greater protection than that afforded by the First Amendment. *Id.* at 361. "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . ., not whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Id.* at 361–62. "A 'substantial burden,' however, involves something more than an incidental effect or inconvenience on religious exercise and 'is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.'" *Robbins v. Robertson*, 782 F. App'x 794, 801–02 (11th Cir. 2019) (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). Further, RLUIPA "applies to an exercise of religion regardless of whether it is 'compelled,'"

*Holt*, 574 U.S. at 362 (citing § 2000cc–5(7)(A)), or whether the "belief . . . [is] shared

by all of the members of a religious sect." *Id.* (quotation omitted).

Petitioner attaches to the complaint a copy of the relevant FDOC grooming

regulation, which provides in pertinent part:

> For security and identification purposes, no inmate shall be
> permitted to have his or her hair, to include eyebrows and
> facial hair, dyed, cut, shaved[,] or styled according to fads
> or extremes that would call attention to the inmate or
> separate inmates into groups based upon style.  This would
> include, for example, dreadlocks, tails, woven braids,
> cutting, sculpting, clipping or etching numbers, letters,
> words, symbols[,] or other designs into the hair.  Male
> inmates shall have their hair cut short to medium uniform
> length at all times with no part of the ear or collar covered.
> Male inmates shall be permitted to shave their entire heads
> with clippers in a uniform manner unless the inmate is using
> his hairstyle or lack thereof to demonstrate gang affiliation
> or otherwise pose a threat to institutional security.  Partial
> shaving of the head in a Mohawk or other distinctive style
> shall not be permitted.

(Dkt. 5 at 26.)

Although Plaintiff challenges this regulation as unconstitutional, "[t]he

Eleventh Circuit has routinely upheld a prison's hair length regulations in the face of

First Amendment and other constitutional or statutory challenges," including

RLUIPA. *Parker v. Shepard*, No. CV 115-148, 2016 WL 3349159, at *1 (S.D. Ga. Apr.

18, 2016) (collecting cases), *report and recommendation adopted by* 2016 WL 3360642

(S.D. Ga. June 15, 2016).  Indeed, in *Harris v. Chapman*, the Eleventh Circuit reviewed

Florida's regulation, which set forth a hair length regulation identical to that identified

in Plaintiff's complaint and found that the regulation did not violate the First

Amendment or RFRA (which had not yet been found unconstitutional as applied to the states).  97 F.3d 499, 501, 504 (11th Cir. 1996); *see also Knight v. Thompson*, 797 F.3d 934, 937 (11th Cir. 2015) ("[The p]laintiffs have not presented any less restrictive alternative that can adequately contain the risks associated with long hair; they have merely argued that the ADOC [(Alabama Department of Corrections)] should volunteer to assume those risks.  The RLUIPA places upon the ADOC no such duty.").

Because the Eleventh Circuit has found that identical and substantially similar regulations survive review under the First Amendment and RLUIPA, Plaintiff fails to state a claim for relief based on his allegations that the Secretary approved the hair length regulation, that Defendants forced him to cut his hair in violation of his religious beliefs, and that he was arrested for and found guilty of a disciplinary infraction for failing to cut his hair in accordance with the hair length regulation.

Finally, Plaintiff notes that he filed a petition for writ of mandamus in the Florida Supreme Court regarding the same facts as alleged in this case, and that the petition remains pending.  (Dkt. 5 at 29.)  Review of the Florida Supreme Court's docket for that case reveals that the case was transferred to the appropriate county court.  *See Henderson v. Fla. Dep't Corr.*, SC2024-0965 (Fla. Aug. 30, 2024).  That case remains pending. *See Henderson v. Dep't of Corr.*, No. 37 2024 CA 001425 (Fla. Leon County Ct.).  In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court "espouse[d] a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."  *Middlesex Cnty. Ethics Comm. v.*

*Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  Although initially applied to state criminal proceedings, "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved."  *Id.* at 432.  Abstention under *Younger* is required where "(1) there is a pending state judicial proceeding[,] (2) the proceeding implicates important state interests[,] and (3) the parties have an adequate opportunity to raise any constitutional claims in the state proceeding."  *Newsome v. Broward Cnty. Pub. Def.*, 304 F. App'x 814, 816 (11th Cir. 2008) (per curiam) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  Here, Plaintiff's petition for writ of mandamus remains pending in the state county court, and he may raise his federal constitutional challenges in that proceeding and any subsequent appeals.  Further, Plaintiff's proceeding implicates Florida's important interests in prison security, civil rights, and "providing a forum competent to vindicate any constitutional objections," among others.  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975).  As the Supreme Court has explained, a federal court's interference with state judicial proceedings "results in duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state courts' ability to enforce constitutional principles.'"  *Id.* (quoting *Stefel v. Thompson*, 415 U.S. 452, 462 (1974)).

Additionally, Plaintiff has not alleged facts showing that an exception to the *Younger* abstention doctrine may apply.  *See Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 n.6 (11th Cir. 2004) (explaining that exceptions exist to the abstention doctrine where: "(1) there is evidence of state proceedings motivated by bad faith[,] (2)

irreparable injury would occur[,] or (3) there is no adequate state forum where the constitutional issues can be raised"). Accordingly, even if Plaintiff had sufficiently stated a claim for relief, the court is required to abstain from adjudicating this action while his related state proceeding remains pending.

### B. State Claims

Plaintiff also asserts that Defendants have violated his rights under Florida constitutional and statutory law. (Dkt. 5 at 3.) In the absence of a sufficiently pleaded federal claim, the court declines to consider the supplemental state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

### C. Motions for Injunctive Relief and Service of Process

Plaintiff moves to proceed with service of process on Defendants and for a "prohibitory injunction." (Dkts. 10 & 11.) Given Plaintiff's failure to state a claim and the court's necessary abstention under *Younger*, as described above, Plaintiff's requests for service of process and injunctive relief are due to be denied as moot.

## CONCLUSION

1. Plaintiff's complaint (Dkt. 5) is **DISMISSED without prejudice** due to abstention under *Younger v. Harris*, 401 U.S. 37 (1971), and Plaintiff's failure to state a claim. *See* 28 U.S.C. § 1915A.

2. Plaintiff's motion to proceed in forma pauperis (Dkt. 6), Motion for Marshal to Serve Process (Dkt. 10), and Motion for Prohibitory Injunction (Dkt. 11) are **DENIED as moot**.

3. The Clerk is **DIRECTED** to terminate any other pending motions and deadlines and to close this case.

**ORDERED** in Orlando, Florida, on December 10, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Unrepresented Party